IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                Plaintiff,<br><br>v.<br><br>Jacob Allen Meinhardt,<br><br>                Defendant. | No. CR-13-00469-TUC-JGZ (JR)<br><br>**ORDER** |

On September 13, 2013, Magistrate Judge Jacqueline Rateau issued a Report and Recommendation ("R&R") (Doc. 32) recommending that Defendant's Motion to Suppress (Doc. 14) be denied. In reviewing the totality of the circumstances, Judge Rateau concluded that United States Border Patrol agents had reasonable suspicion to believe that the Defendant was engaged in illegal activity. (Doc. 32, p. 13.) In the R&R, Judge Rateau explained the factors giving rise to her decision.

> The objectively reasonable factors relied upon by the agents in this case were as follows: (1) due to bad weather, the checkpoint was not operational, prompting agents to believe that alien and drug transportation would increase; (2) previous drug seizures had been made that day, thereby putting agents on high alert; (3) the Defendant drove erratically, leading agents to believe he was trying to evade police; (4) the Defendant repeatedly reached into the passenger's side of the SUV while followed by police, prompting agents to believe he might be reaching for a weapon; and (4) [sic] the back window of the Defendant's SUV was partially open, causing agents to believe that his cargo smelled unpleasant.

(*Id.*)

On September 23, 2013, Defendant challenged three factors cited by Judge Rateau in the R&R: (1) the R&R erroneously considered unrelated drug seizures in its "totality of the circumstances" test; (2) the R&R erroneously characterized Defendant's driving as erratic and evasive; and (3) the R&R erroneously considered agents' testimony that they feared Defendant was reaching for a weapon. (Doc. 34, p. 3-5.) The government filed a response to Defendant's Objections on September 26, 2013.[1] (Doc. 37.)

For the reasons stated herein, the Court will adopt the R&R.

## STANDARD OF REVIEW

The Court reviews de novo the objected-to portions of the R&R. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). The Court reviews for clear error the unobjected-to portions of the R&R. *Johnson v. Zema Systems Corp.*, 170 F.3d 734, 739 (7th Cir. 1999); *see also Conley v. Crabtree*, 14 F.Supp.2d 1203, 1204 (D. Or. 1998).

## FACTS

No objections were raised to the factual findings set forth in the R&R. After an independent review of the record, the Court adopts these findings by reference, except as indicated in this Order. In addition, the Court has taken into account the following supplemental facts:

- Agent Mendola testified that he has personally intercepted vehicles transporting illegal aliens in the wintertime where the vehicles' windows have been rolled down due to the smell. (TR 32:13-20.)[2]
- On February 20, 2013, Agent Mendola, the acting supervisor, was working the 4:00 p.m. to 12 a.m. shift. (TR 9:2-10.)

---

[1] The government's response was minimal and failed to address the Defendant's arguments. Only two paragraphs of the two-page response specifically pertain to Judge Rateau's recommendation. Moreover, one of these two paragraphs is copied verbatim from the government's previously filed response to the motion to suppress, including the erroneous reference to "probable cause" as the applicable legal standard. (Doc. 20.) The Defendant's three objections are not mentioned in the government's response.

[2] TR refers to the transcript from the August 28, 2013 hearing on the Motion to Suppress.

## DISCUSSION

1. **The Magistrate Judge did not err in considering unrelated drug seizures**

Defendant argues that four drug seizures occurring on the day of his stop are legally irrelevant absent a showing that the other drug seizures were connected to him. (Doc. 34, p. 4.) In support, Defendant cites *United States v. Garcia-Camacho*, 53 F.3d 244, 246 n.3 (9th Cir. 1995), in which the Ninth Circuit rejected as meritless, the government's assertion that Border Patrol agents' discovery of a van of illegal aliens on Interstate 5, 300 miles north of the U.S.-Mexico international border, provided support for the subsequent stop of the defendants' truck, five to eight minutes later. The Ninth Circuit observed that no evidence linked the van in any way to the defendants' truck and declined to assume that all vehicles traveling the same busy highway somehow become suspicious simply because Border Patrol agents discovered illegal activity in one of the vehicles traveling that highway. *Id.*

While the Defendant correctly states the holding of *Garcia-Camacho*, this Court disagrees with Defendant's assertion that the R&R considered agent testimony regarding the four drug seizures as a "totality of the circumstances" factor. The R&R notes "previous drug seizures had been made that day, thereby putting agents on high alert." (Doc. 32, p. 13.) The R&R does not rely on these previous drug seizures as a factor supporting the stop of Defendant's vehicle. (Doc. 32, pp. 9-10.) Rather, the R&R focuses on the checkpoint's closure and notes that "it was reasonable for Agent Mendola to conclude that drug and alien transporters would know when the checkpoint was closed and to act accordingly." (*Id.*) The R&R explains briefly that "[Agent Mendola's] inference was bolstered by the fact that agents had seized other marijuana loads that day." *(Id.*, p. 10.) The R&R correctly concludes, citing *Berber-Tinoco*, 510 F.3d at 1088, that the "totality of the circumstances" includes a consideration of the modes or patterns of operation of certain kinds of law-breakers. (*Id.*)

In addition, a careful review of the agents' testimony in this case reveals that the

agents did not allege a link between the prior drug seizures and the stop of Defendant's vehicle.[3]  Rather, Agent Mendola testified that because of the previous drug seizures and because the checkpoint was down, he was on particular "high alert," which made him more aware of the activities around him.  (TR 19:1-10.)  This "high alert" status led Agent Mendola to observe the circumstances that ultimately led to his reasonable suspicion, but it was not the basis for his reasonable suspicion. Thus, this case is distinguishable from *Garcia-Camacho*.[4]

> 2. **The Magistrate Judge did not err in considering the manner of Defendant's driving**

The Defendant disagrees with the Magistrate Judge's conclusion that Defendant's driving was erratic or evasive.  According to Defendant, the Magistrate Judge's characterization of Defendant's weaving within his own lane as erratic driving is an exaggeration and characterization of his driving as evasive is in error because his driving was not an "obvious, unambiguous attempt [] to evade contact with law enforcement."  (Doc. 34, pp. 4-5.)

The Magistrate Judge found Defendant's driving behavior highly relevant.  (Doc. 32, p. 11.)  This Court agrees.  Agent Mendola testified that it looked like Defendant's body was "almost on top of the steering wheel [,] and he was leaning forward with his head over the steering wheel" just inches from the dashboard.  (TR 24:13-20.)  Agent Mendola testified that in his experience, people who are driving illegal cargo often drive in this manner when they are nervous.  (TR 25.)  Although Defendant argues that nothing was "reasonably suspicious" about this "cautionary" driving behavior in light of the inclement weather, this position is undermined by the additional facts and testimony that

---

[3] Both Agent Mendola and Agent Mendiola testified that they had no information that the previously seized drug loads were connected to Defendant's vehicle.  (TR 40:2-4; TR 65:24-25; 66:1.)

[4] To the extent it could be argued that the R&R relies on the drug seizures as a basis for finding reasonable suspicion, this Court finds that sufficient reasonable suspicion exists without them.

- 4 -

Defendant subsequently accelerated suddenly, changed lanes, and then changed lanes again cutting off the vehicle in front of him causing that vehicle to brake. (TR 27: 24-25; 28:1-9.)[5] Defendant's subsequent driving was not suggestive of "cautionary" driving and his driving was erratic in that it was characterized by a lack of consistency, regularity or uniformity.[6] Evidence of the Defendant's manner and mode of driving supported a finding of reasonable suspicion.

    3. **The Magistrate Judge did not err in considering the agent's testimony that Defendant appeared to be reaching for a weapon**

Finally, the Court rejects Defendant's argument that it was not objectively reasonable for the agents or the Magistrate Judge to infer that Defendant could be armed and reaching for a weapon under the circumstances. Agent Mendiola testified that when he pulled alongside Defendant's SUV in his marked service vehicle, he could see Defendant "kind of bouncing," reaching down, multiple times to his right side. (TR 60:1-24.) Agent Mendiola could also see Defendant "kind of moving to the side, kind of lowering himself to the right side." (TR 60: 8-10.) Agent Mendiola was concerned that Defendant was reaching for some type of weapon and alerted Agent Mendola for officer safety reasons. (TR 60:10-11; 60:19.)

---

[5] The R&R misattributes certain observations by Agents Mendiola and Mendola. The R&R indicates that when Agent Mendiola, in full uniform and driving his marked service vehicle, attempted to get behind Defendant, Defendant increased his speed and abruptly cut in front of the car in front of it, causing the car to hit its brakes. (Doc. 32, p. 11.) The R&R further states that Agent Mendiola observed the SUV swerve, making sudden right and left movements while he drove alongside the vehicle. (*Id.*) In fact the record shows (as stated in another section of the R&R), that it was Agent Mendola, driving an unmarked grey F-150, who attempted to pull behind Defendant and who observed Defendant increase his speed and cut in front of another car (Doc. 32, p. 4; TR 17:2; 27-28), and it was Agent Mendiola, in a marked vehicle, who drove alongside Defendant's SUV and observed Defendant swerving, making sudden right and left movements, and reaching for something. (Doc. 32, p. 5; TR 32-33.)

[6] Merriam-Webster dictionary defines erratic as "characterized by lack of consistency, regularity or uniformity; deviating from what is ordinary or standard." "Erratic." *Merriam-Webster.com.*2013. http://www.merriam-webster.com (21 October 2013).

Agent Mendiola's testimony as to his observations is undisputed as is his reasonable inference of the significance of what he observed. The fact that Defendant was not ultimately found to have a weapon does not render Agent Mediola's reasonable inferences less relevant. *See, e.g., United States v. Mariscal,* 285 F.3d 1127, 1131 (9th Cir. 2002) (finding that "[a] mere mistake of fact will not render a stop illegal, if the objective facts known to the officer gave rise to a reasonable suspicion that criminal activity was afoot."). This Court notes that the record is often "equally capable of supporting an innocent explanation as reasonable suspicion" and that in such cases, the "Supreme Court directs us to give due weight to the factual inferences drawn by law enforcement officers." *United States v. Berber-Tinoco*, 510 F.3d 1083, 1087 (9th Cir. 2007) (citing *United States v. Arvizu,* 534 U.S. 266, 277 (2002)).[7]

In light of the undisputed testimony, the Court finds that the agents drew "rational inferences" from Defendant's conduct and that his conduct, when considered in the "totality of the circumstances," created reasonable suspicion. *See U.S. v. Cortez*, 449 U.S. 411 416-18 (1981). Defendant's objections are overruled.

## CONCLUSION

The Supreme Court prohibits a "divide-and-conquer analysis" of looking at each factor in isolation and according it no weight if it is susceptible to an innocent explanation. *Arvizu*, U.S. 534 at 274. Instead, a court must take a holistic approach and consider the totality of the circumstances, taking into account all of the facts in light of the others. Viewing all of the facts together, as this Court must, and giving due weight to the reasonable factual inferences drawn by law enforcement officers, this Court finds that while individual factors may appear innocent in isolation, they constitute suspicious behavior when aggregated together. *Sokolow,* 490 U.S. at 9–10; *Berber-Tinoco*, 510 F.3d at 1087 (citation omitted). Thus, after an independent review of the pleadings and transcript,

---

[7] The Supreme Court has reasoned that "officers may make reasonable deductions and inferences based on their experience and specialized training that 'might well elude an untrained person.'" *Arvizu,* U.S. 534 at 273 (internal quotation marks omitted).

- 6 -

IT IS HEREBY ORDERED that:

1. The Report and Recommendation (Doc. 32) is ACCEPTED AND ADOPTED as the findings of fact and conclusions of law of this Court, with the modifications discussed in this Order; and

2. Defendant's Motion to Suppress (Doc. 14) is DENIED.

Dated this 25th day of October, 2013.

Jennifer G. Zipps
United States District Judge